TOMPKINS SPECIAL TERM, November, 1847.   *Shankland,*
Justice.

Barbour
1b    238
170 NY ⁸502

WEAVER and others *vs.* TOOGOOD and others.

Where the property of a defendant, sold under execution, is bid in by the plaintiff in the judgment, for a sum sufficient to satisfy the same, the plaintiff ceases to be a judgment creditor of the defendant; and he cannot attack conveyances subsequently made by the judgment debtor, nor ask to have dealings between him and third persons set aside, on the ground of fraud.

Where a judgment creditor purchases, at a sheriff's sale under an execution issued upon his judgment, land of the defendant which is covered by a prior mortgage, with knowledge of such mortgage, he cannot come into a court of equity to com-

pel the judgment debtor to pay such prior mortgage, so as to discharge the land purchased, from the lien thereof.

In such a case the purchaser will be presumed to have bid no more than the equity of redemption was worth; and the land itself, as between such purchaser and the mortgagor, becomes the primary fund for the payment of the mortgage debt.

If the holder of a mortgage which is a lien upon a part of the real estate of the mortgagor, only, recovers a judgment upon the bond given therewith, and attempts to collect the same out of land which the mortgagor has conveyed to another, the grantee of such land may come into a court of equity for the protection of his rights, and to compel the mortgagee to resort to the mortgaged premises, for the satisfaction of his debt.

IN EQUITY.    The facts in this case were as follows: Chapman Fulkerson, one of the defendants, being seised of several pieces of land in Tompkins county, mortgaged one of them to one Lamont in 1834, and another piece, of 63 acres, to Burr in 1829.    Burr obtained judgment on his bond accompanying his mortgage, on the 21st of January, 1843; and soon afterwards he assigned his judgment and the mortgage to the defendant Toogood.    On the 26th of January, 1843, Chapman Fulkerson conveyed away his land, not covered by the Burr mortgage, to his son Stephen Fulkerson, one of the defendants, by warranty deed.    Amongst the pieces thus conveyed was a lot of 47 acres, on which the Burr judgment was a lien.    The complainants obtained judgments against Chapman Fulkerson, on the 31st day of January, 1843, which were liens on the land covered by the Burr mortgage.    On the 25th day of January, 1845, execution was issued on the Burr judgment, with the proper directions to the sheriff endorsed, not to sell the equity of redemption of C. Fulkerson, in the lands covered by the mortgage; and that execution was levied on the 47 acres, and other lands, and the same were advertised for sale.    The 47 acres were not sold, however; but by the direction of Toogood, who had purchased the judgment of Burr, the sheriff, on the 20th of December, 1845, returned the execution unsatisfied.    On the 23d of July, 1845, the complainants caused the 63 acres of land covered by the Burr mortgage to be sold on their executions, and they bid in the same, themselves, at a price which satisfied their executions.    After the complainants had thus bid in the 63 acres

covered by the Burr mortgage, Toogood caused the sheriff to return the execution issued on the Burr judgment as aforesaid, and commenced foreclosing the Burr mortgage which had been assigned to him, and which covered the 63 acres bid in by the complainants on their execution. The complainants filed their bill against Chapman Fulkerson, Stephen Fulkerson, and Toogood, to set aside the sheriff's return on the Burr execution, and to oblige Toogood to exhaust his remedy on the Burr judgment against the 47 acres sold by C. Fulkerson to S. Fulkerson, and also to set aside the conveyance from C. Fulkerson to his son S. Fulkerson, for fraud ; and for general relief. Chapman Fulkerson became insolvent in the fall of 1842, or winter of 1843 ; so that the complainants' only means of obtaining their pay was the land which they had thus purchased at the sheriff's sale on their executions.

*Moses R. Wright & Ben Johnson*, for the complainants.

*S. Mack & A. Dana*, for the defendants.

SHANKLAND, J. Admitting that the assignment made by Henry B. Weaver to Ezra Weaver, after the filing of the bill in this cause, conveyed to the latter all the right of the former in the subject matter of this suit ; and that Ezra is now the proper party to prosecute the same, it appears to me there are insuperable difficulties in the way of a decree in favor of the complainants. The complainants purchased in the 63 acres covered by the mortgage to Burr, on the sheriff's sale, by virtue of their several executions, on the 3d of July, 1845, at an amount sufficient to satisfy all those executions, leaving a surplus to go to the judgment debtor. The complainants then ceased to be the judgment creditors of Chapman Fulkerson, and became the purchasers of the equity of redemption of the sixty-three acres. (*Jackson* v. *Cadwell*, 1 *Cowen's Rep.* 622. *Forsyth* v. *Clark*, 3 *Wend.* 637, 655.)

Several important, and in this case decisive results flow from the above position. 1. The complainants cannot attack the

Weaver *v.* Toogood.

conveyances to Stephen Fulkerson, nor the mortgage taken back, nor any of the dealings between Chapman Fulkerson and Toogood, on the allegations of fraud. (3 *Wend.* 637.) 2. Nor can the complainants call upon Chapman Fulkerson to pay the mortgage to Burr, or his assignee; because by the purchase they made, with knowledge of the prior mortgage, they are supposed to have bid no more than the equity of redemption was worth; and the land itself, as between the complainants and Chapman Fulkerson, became the primary fund for the payment of the mortgage debt. (*Heyer* v. *Pruyn*, 7 *Paige*, 465. *McKinstry* v. *Curtis*, 10 *Id.* 503. *Tice* v. *Annin*, 2 *John. Ch. Rep.* 125.) But if Toogood were forced to collect the Burr judgment out of the lands sold to Stephen Fulkerson by Chapman Fulkerson, it would deprive Chapman Fulkerson, *indirectly*, of the benefit of this principle; because he having conveyed the forty-seven acres to Stephen, with covenants of warranty, would be liable to respond to him for any failure of title, thus warranted.

But admitting that the complainants were judgment creditors, and that Toogood had liens on two funds, for the security of the same debt, viz. the mortgage on the sixty-three acres, and the judgment on the forty-seven acres, and that the complainants could reach but one of those funds, viz. the sixty-three acres; still, as Stephen Fulkerson purchased the forty-seven acres before the complainants obtained their judgments and made their purchase of the sixty-three acres, it would be contrary to equity, to deprive Stephen of the benefit of his prior purchase, for the sake of subsequent purchasers. The true rule as applicable to persons thus situated is, *prior est tempore, potior est jure.* If Stephen Fulkerson were not a bona fide purchaser, I admit this rule would not apply; and in that case I should feel no difficulty in setting aside the return of the deputy sheriff, of *nulla bona*, on the Burr execution, as false, or in enjoining Toogood against foreclosing the mortgage until he had exhausted his remedy on his judgment. But I am not prepared to adjudge that conveyance void for fraud, on the evidence submitted to me. The testimony shows, that he labored for

his father faithfully, as a hired servant, for over six years, and that his wages, together with what he has paid and assumed to pay to the creditors of his father, amounts to the purchase money of the lands conveyed to him.

But this cause, in my judgment, stops short of that inquiry. The Burr mortgage being a valid lien, and being known to the complainants, at the time of their purchase, their subsequent judgments were liens on Chapman Fulkerson's equity of redemption only; and their interest derived from the sale on the executions issued on those judgments, cannot now be claimed to be of a more extensive title. It is very probable that the complainants thought they were purchasing the fee, and they may have bid a price accordingly; and if they were induced to do so by misrepresentation, or mistake, the court out of which their execution issued may relieve them, on a proper representation of the facts. Indeed a bare statement of the facts, as they existed at the date of the complainants' purchase, will show how easily they could have been mistaken, as to the value of their purchase. Burr, at that time, had a judgment for the mortgage debt, which was a lien on the forty-seven acre lot, but which was not a lien on the sixty-three acre lot covered by the mortgage. The execution on that judgment was in the hands of the sheriff, with directions to levy; and the forty-seven acres were subject to that levy. Such were the circumstances existing on the 3d of July, 1845, when the complainants became the purchasers of the sixty-three acres, at the sale on their executions. And it is only by reason of the false return of the sheriff, subsequently made on the Burr judgment, that the mortgage given to Burr, and by him assigned to Toogood, can be foreclosed on the sixty-three acres. (2 R. S. 119, § 162. Id. 450, § 2. Id. 291, § 31.)

But although the complainants could not foresee that the deputy sheriff would make such a return as would enable the owner of the Burr judgment to reach the land purchased by them, through a foreclosure of the mortgage, yet they were bound to know that Stephen Fulkerson, as a prior purchaser of the forty-seven acres, could come into a court of equity and

Weaver *v.* Toogood.

oblige the owner of the Burr mortgage and judgment, to sell the lands which had belonged to Chapman Fulkerson, in the inverse order of their alienation. (*Clowes* v. *Dickenson*, 9 *Cowen's Rep.* 403. *Gill* v. *Lyon*, 1 *John. Ch. Rep.* 447. *Clowes* v. *Dickenson*, 5 *Id.* 235.) They were also bound to know that as between themselves and Chapman Fulkerson, they obtained only his equity of redemption by their purchase; and that the land was the primary fund for the payment of the mortgage debt. And that if the owner of the Burr debt should attempt to collect it out of the mortgagor's other property, or out of property which he had conveyed with warranty, he could call upon this court to protect his rights, and oblige a resort to the mortgaged premises for the satisfaction of that debt. (*Jumel* v. *Jumel*, 7 *Paige's Rep.* 591. *Heyer* v. *Pruyn*, *Id.* 465. *Cox* v. *Wheeler*, *Id.* 248.)

The result of the above principles,. which are adopted and sustained by this court, is that the false return of the deputy sheriff, on the execution issued on the judgment in favor of Burr, against Chapman Fulkerson, has worked no injury to the complainants, inasmuch as this court, on the application of either of the Fulkersons, would have compelled a resort to the mortgaged premises for the satisfaction of the Burr debt, if the sheriff had attempted to sell the forty-seven acres purchased by Stephen Fulkerson.

Although I do exceedingly regret the necessity which obliges me to come to the above conclusions, I must dismiss the complainants bill, with costs; but without prejudice to their rights in any future litigation.