### McNAMARA et al. v. McNAMARA et al.

(Supreme Court, Equity Term, Oswego County. September, 1911.)

1. MORTGAGES (§ 513*)—FORECLOSURE—ORDER OF OFFERING FOR SALE.

Where a husband and wife executed a mortgage on land purchased by the wife and other land owned by the husband for the price of the wife's land, her land was primarily liable for the debt, and on a foreclosure the husband could insist that it be sold first and his land resorted to only if her land did not sell for enough to satisfy the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1516; Dec. Dig. § 513.*]

2. DESCENT AND DISTRIBUTION (§ 129*)—RIGHTS OF HEIRS—FORECLOSURE OF MORTGAGE—ORDER OF OFFERING FOR SALE.

The heirs of a mortgagor succeed to his equitable right to have the land of another mortgagor primarily liable for the mortgage debt sold first in satisfaction of the mortgage.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 471; Dec. Dig. § 129;* Mortgages, Cent. Dig. § 1598.]

3. EXECUTION (§ 268*)—SALE—TITLE OF PURCHASER.

Under Code Civ. Proc. § 1440, providing that if land sold under execution is not redeemed, and a deed is executed in pursuance of the sale, the grantee shall be deemed to be vested with the "legal estate," the purchaser of mortgaged lands under an execution acquires merely the equity of redemption, and does not acquire the mortgagor's equitable right to insist that other lands covered by the same mortgage shall be first sold, because primarily liable, since statutes for the sale of land under execution, being in derogation of the common law, should be strictly construed.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 762–767; Dec. Dig. § 268.*]

4. FRAUDS, STATUTE OF (§ 129*)—SALE OF LAND—ORAL CONTRACT.

An oral contract for the sale of land, followed by payment of the price and possession by the vendee, is good, and equity will decree a conveyance of the land.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

5. EXECUTION (§ 266*)—SALE—TITLE OF PURCHASER.

 A purchaser of land at an execution sale acquires only the title and interest of the execution debtor at the time the judgment was docketed, and hence, where prior to the docketing of a judgment the execution debtor had entered into an oral contract of sale, followed by possession and payment of the purchase price in full, the purchaser at the execution sale acquired no title.

 [Ed. Note.—For other cases, see Execution, Cent. Dig. § 760; Dec. Dig. § 266.*]

Action by Joseph McNamara, Jr., and another, against Joseph McNamara and others to foreclose two mortgages. Judgment for plaintiffs.

A. C. Woodruff (O. M. Reilly, of counsel), for plaintiffs.
Davies, Johnson & Wilkinson, for defendant Simons.

MERRELL, J. This action is brought to foreclose two mortgages. The facts are somewhat complicated, and, so far as they are pertinent to the questions involved, are as follows: On April 6, 1870, one James McNamara, residing in the town of Redfield, county of Oswego, N. Y., was the owner of 69 acres of land in said town free and clear of all incumbrance. On said 6th day of April, 1870, Daniel G. Dorrance and wife, of Oneida Castle, Oneida county, N. Y., conveyed to Margaret McNamara, the wife of James McNamara, a parcel of land consisting of 75 acres, situate in said town of Redfield, for the consideration of $1,025. To secure the purchase price of said 75 acres conveyed to Margaret McNamara, the said James McNamara and Margaret, his wife, executed a mortgage to said Dorrance for said sum of $1,025 upon the 75 acres conveyed to Mrs. McNamara, and also upon the 69 acres owned by James McNamara. This is one of the mortgages which the plaintiffs are seeking to foreclose. James McNamara died intestate October 27, 1880, leaving his widow, Margaret McNamara, and three sons, namely, James McNamara, Joseph McNamara, and Thomas McNamara, as his only heirs at law.

[1] The effect of the execution of the mortgage by James McNamara and Margaret, his wife, to secure the purchase price of the 75 acres conveyed to Margaret, is that the said 75 acres was in law principally liable for the payment of the mortgage debt, and the 69 acres owned by James and included in the mortgage was merely a surety for the payment of such debt. Erie County Savings Bank v. Roop, 80 N. Y. 591; Vartie v. Underwood, 18 Barb. 561. And on a foreclosure of said mortgage James McNamara would have had the right to require the sale of the 75-acre parcel first to satisfy the mortgage, and that his 69 acres, which was mortgaged as surety, be not interfered with unless the 75 acres proved insufficient to satisfy the mortgage.

[2] Upon his death his three sons, by operation of law, became the owners each of an undivided one-third of the 69 acres owned by their father subject to the dower rights therein of their mother, Margaret McNamara, and undoubtedly the equitable right to insist on

the prior sale of the 75 acres under said mortgage descended to said heirs of said James McNamara, deceased.

On December 25, 1884, Thomas Norton conveyed to James McNamara, 2d, 39.08 acres of land in Redfield aforesaid for $675, and on the same day conveyed to Joseph McNamara, his brother, 29.88 acres for $525. On April 4, 1885, a mortgage was executed by the widow, Margaret, and by the three sons of James McNamara, deceased, and by the wives of such of them as were married, upon the four parcels before mentioned of 69 acres, 75 acres, 39.08 acres, and 29.88 acres, for $1,200, the purchase price of said two parcels of 39.08 acres and 29.88 acres conveyed to James McNamara, 2d, and Joseph McNamara, respectively. Thomas McNamara had no interest in the two parcels last mentioned to secure the purchase price of which said mortgage of $1,200 was given and in which he joined, and therefore, under the authorities above cited, the undivided one-third interest which Thomas owned in the 69 acres, and to take care of which he executed said mortgage, was only a surety for this last-mentioned mortgage, and he had a right to insist upon the sale of the two parcels conveyed to his brothers James and Joseph before his interest in the 69 acres could be touched. This $1,200 mortgage is the other mortgage which the plaintiffs are seeking to foreclose herein.

Margaret McNamara, the widow of James McNamara, on July 9, 1887, conveyed to her son James, 2d, said 75 acres, taking back a life lease thereon. James, 2d, in turn, on September 21, 1889, conveyed said 75 acres to his wife, Bridget McNamara. Margaret McNamara died January 3, 1902, intestate.

[3] On March 26, 1888, the defendant George G. Simons docketed in the Oswego county clerk's office a judgment in his favor and against Thomas McNamara for $174.42. Execution was issued thereon, and the undivided one-third interest which the said judgment creditor claimed then belonged to Thomas McNamara in the 69-acre parcel was sold at sheriff's sale, and thereafter, on April 12, 1893, a deed was executed by the sheriff of Oswego county to said defendant Simons.

It is claimed by the defendant George G. Simons that at the time of the docketing of his said judgment Thomas McNamara was the owner of an undivided one-third of said 69 acres, and that so far as the two mortgages above mentioned were concerned he had a right to insist that the 75 acres be first sold to satisfy the $1,025 mortgage, and that the 29.88 and the 39.08 acre parcels be first sold to satisfy the $1,200 mortgage.

It is claimed by the said defendant that this right passed to Simons on the execution sale. This is the real point involved in this case. Did the defendant George G. Simons obtain upon the sale under the execution against the defendant Thomas McNamara the right which he undoubtedly held to insist upon the order of sale of the real estate covered by said mortgages? For unless he did acquire such right, he can have no standing in opposition to the foreclosure of the mortgages in question by the plaintiffs. The rights of the defendant Simons are dependent entirely upon his succeeding to the right of

Thomas in the 69 acres under the execution sale. That Thomas had the right to require the sale of the different parcels in the order claimed by the defendant herein is without question.

Except for the statutory provisions, the interest of a person in real property can only be transferred by the operation of law in case of his death intestate, or by his voluntary act. The statute, however, provides for a sale of real property to satisfy an execution, and a course of procedure is established by which a judgment creditor may collect his judgment by execution and a sale of the judgment debtor's real property thereunder. The title which a purchaser may obtain on the sale of real property under execution is defined by section 1440 of the Code, which provides as follows:

"The right and title of the judgment debtor, or a person holding under him, or deriving title through him, to real property, sold by virtue of an execution is not divested by the sale, until the expiration of the period, within which it can be redeemed, as prescribed in this article, and the execution of the sheriff's deed. But if the property is not redeemed, and a deed is executed in pursuance of the sale, the grantee in the deed is deemed to have been *vested with the legal estate*, from the time of sale."

As the sale was in derogation of law and purely the creature of statute, the statute must be strictly construed, and, section 1440 defining just what title Simons obtained under his sale, he became vested only in the bare legal estate owned by Thomas McNamara. Smith v. Colvin, 17 Barb. 162; Wood v. American Fire Insurance Company, 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733. See opinion by O'Brien, J., at top of page 387 of 149 N. Y., 44 N. E. 81, 53 Am. St. Rep. 733.

Counsel for defendant asks: What became of the equitable right which Thomas McNamara had to insist on the sale first of the 75 acres to satisfy the $1,025 mortgage, and the sale of the two parcels conveyed to his brothers Joseph and James to satisfy the $1,200 mortgage, before the 69 acres was interfered with?

I do not think that right was disposed of on the execution sale. Simons bought no more than the bare equity of redemption which Thomas McNamara held in the undivided one-third of said 69 acres, and succeeded only to the legal title at said sale. It is entirely probable that Thomas, had he seen fit to deed his interest in the 69 acres, providing he had not parted with such interest, might have assigned this right; but, as has been suggested, the sale was made without his consent, and under statutory provisions which restrict the title which the purchaser may receive in such proceeding. As the owner of the bare equity of redemption, Thomas McNamara was seised of an undivided third in said 69 acres, subject to the two mortgages upon it, and the defendant Simons, when he purchased the property, purchased only the equity of redemption, subject to the two mortgages. Weaver v. Toogood, 1 Barb. 238; McKinstry v. Curtis, 10 Paige, 503; Snedeker v. Snedeker, 18 Hun, 355. This equitable right which rested with Thomas McNamara, not having been sold or conveyed with his consent, was not obtained by the defendant Simons under his execution sale.

[4] But back of all that has been suggested, it seems to me that the evidence clearly shows that, prior to the docketing of the defendant's judgment against Thomas McNamara, the latter had sold and disposed of to his brother Joseph any interest which he may have had in the 69 acres. Joseph McNamara was offered as a witness in behalf of the defendant, who therefore must be considered as vouching for his reliability, and Joseph McNamara testified that he had occupied the 69 acres in question all his lifetime; in fact, that he was born upon the premises, and that he purchased of his brother Thomas for $400 all of the latter's interest therein, and that he had paid the $400 agreed upon at different times, commencing as far back as 1871 and extending through a period of about 10 years, and that he paid the entire purchase price of the interest of Thomas prior to the time that the defendant Simons obtained his judgment; that the last of the purchase price was paid about the year 1880. This $400 was entirely independent of the $400 that was afterwards paid to Thomas at the time he sought to make some trouble over the title. This testimony of Joseph McNamara stands undisputed in the case. Such a contract, accompanied by possession, followed by payment of the purchase price, was good. Counsel for defendant are in error in asserting that the record is bare of evidence showing the contract between Joseph and his brother Thomas whereby the latter disposed of his interest in the 69 acres prior to the defendant's judgment.

A verbal contract for the sale of real estate, followed by actual possession and the payment of the purchase price, is not invalid by reason of the statute of frauds, and where a party advances money in the manner testified to by Joseph McNamara to his brother Thomas on the faith of the verbal agreement by the latter to convey to him his interest in said 69 acres, equity will decree conveyance thereof. Roberge v. Winnie, 144 N. Y. 709, 39 N. E. 631; Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000.

[5] The full purchase price of the interest of Thomas having been paid by Joseph three years prior to the judgment of the defendant Simons, the latter obtained no title on the execution sale under his said judgment. All the sheriff could sell was the right, title, and interest which Thomas McNamara had in said premises at the time of the docketing of the judgment, and as the judgment debtor was seised of no interest in said property at that time, the sheriff could convey none. Lamont v. Cheshire, 65 N. Y. 30.

Whatever equitable rights Thomas may have had in said premises were also conveyed to Joseph under said contract.

Therefore, Thomas McNamara having no interest, legal or equitable, in said 69 acres at the time of the docketing of defendant's judgment and of the attempted sale thereunder, and, moreover, for the reasons hereinbefore stated, not having under such execution sale obtained the equitable right which once reposed in Thomas to insist on the order of disposition of said parcels of property, the defendant Simons is not concerned in the application of payments on the Dorrance mortgages, nor as to whether compound interest may have been exacted by the mortgagee. Nor is he concerned in any subsequent

conveyance of the real property by the owners, which he claims worked a release of the interest of Thomas in the 69-acre parcel. As stated before, the rights of the defendant Simons are dependent entirely upon his execution sale, and I do not think that under such sale he obtained any interest whatever in said property.

Subsequently to the events hereinbefore detailed, and on October 24, 1904, the plaintiffs, Joseph McNamara, Jr., and James McNamara, who are sons of the defendant Joseph McNamara, entered into an agreement with the holder of the mortgages as to the amounts unpaid thereon, and assumed the payment thereof, and from time to time payments on the indebtedness represented by said mortgages, were made, down to December 23, 1909, when they completed the payment thereof, and on that day said two mortgages were duly assigned by the executors of Daniel G. Dorrance, deceased, to the plaintiffs.

By reason of the facts hereinbefore stated, I am of the opinion that the plaintiffs are entitled to the decree of this court for a foreclosure of said mortgages, and that the lien of said mortgages is prior to any claim or title of the defendant Simons in said 69 acres, and that the plaintiffs are entitled to a sale of said premises free from any claim or title of said defendant.