## WARNER E. SPRAGUE, Appellant, *v*. WILLIAM B. COCHRAN, Respondent.

An order of General Term reversing an order of Special Term allowing a complaint in an action to foreclose a mortgage to be amended by setting forth an omission by mistake of land intended to be covered by the mortgage, and asking for a reformation of the mortgage, is not reviewable here; it is a matter in the discretion of the court below.

Where one party advances money to another upon the faith of a verbal agreement by the latter to secure the payment by a mortgage on certain lands, and the mortgage is not executed, or if executed is so defective or informal as not to effectuate the purpose of its execution, equity will impress upon the land a lien in favor of the creditor.

This lien attaches upon the loan of the money, and unless there is a waiver of it, express or implied, remains and may be enforced so long as the debt itself may be enforced, and no waiver can be implied from the fact that the creditor received a mortgage, which, by reason of fraud, inadvertence or mistake, is not effectual to secure a specific lien upon the lands or any part of them, nor is the lien merged in any such instrument.

It is not necessary that the agreement shall be in writing to take the case out of the operation of the Statute of Frauds.

To enforce the lien as against the debtor it is not necessary to bring an action to compel specific performance of the agreement or to reform the defective mortgage if one has been given, but the creditor may maintain an action to foreclose the lien by application of the property in payment of the debt.

*It seems*, that in order to preserve or protect such lien against the rights of third persons, it is necessary to make it a matter of record by means of a proper action for that purpose.

In an action brought by plaintiff as assignee to foreclose a mortgage to secure the payment of a bond for $3,000, payable June 1, 1881, the mortgagor, defendant, set up as a defense in substance that he and the mortgagee were at the time of the execution of the instrument co-partners; that the money to secure which the bond and mortgage was given was advanced to pay partnership debts; that upon an accounting of the partnership affairs there would be due to defendant more than enough to pay and satisfy the mortgage; that the assignment was without consideration, and so subject to this equity. In 1887, and during the pendency of said action, defendant brought an action against the mortgagee and others to settle the partnership matters, including the bond and mortgage, to which the plaintiff in the foreclosure suit was subsequently made a party. The two actions were consolidated and referred, and the parties stipulated that the referee should decide both cases in one report. It appeared that the mortgagor requested a loan of the mort-

gagee, offering to secure its payment by a mortgage on all his interests in real estate; that the latter consented to and did make the loan on this proposed security; that the bond and mortgage were given, but that certain land which both parties intended to have and supposed was included, and which constituted a substantial part of the security, was by mistake of the scrivener omitted. The complaint in the action for an accounting alleged that this land was embraced in the mortgage, and the mistake was not discovered until after the commencement of that action. The referee directed the description of the land contained in the mortgage to be amended so as to include the land omitted, and directed a judgment of foreclosure. After the report, plaintiff in the foreclosure suit made a motion at Special Term for leave to amend the complaint therein by inserting averments showing the mistake and asking to have the mortgage reformed; the motion was granted, with leave to the defendant to plead the Statute of Limitations. The pleadings were amended accordingly. Judgment for foreclosure was entered on the report. Defendant appealed from the order allowing the amendment and from that portion of the judgment which directed a reformation of the mortgage. The General Term reversed the judgment so far as appealed from on the ground that the Statute of Limitations was a defense and reversed the order. *Held,* that the reversal of the order was not reviewable here, and so the pleadings were to be considered as not amended; but that the pleadings in the two actions and the stipulation furnished a sufficient basis for the referee to find all the facts and adjust the rights of the parties; that as to the parcel of land omitted from the description there was an equitable mortgage thereon which plaintiff could foreclose for the payment of the debt in the same action wherein the other property covered by the mortgage given was sought to be applied; and, therefore, that the judgment entered on the referee's report was proper and its reversal error.

*Sprague* v. *Cochran* (70 Hun, 512), reversed.

(Argued November 27, 1894; decided December 4, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 8, 1893, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*T. F. Bush* for appellant. The judgment appealed from was a part of the decree in the equity case, and was a neces-

sary result from the facts admitted on the trial and found by the referee. (*Seymour* v. *C. & N. F. R. R. Co.,* 25 Barb. 284; *Lanning* v. *Tompkins,* 45 id. 308; *N. Bank* v. *Lanier,* 7 Hun, 623; *Glacken* v. *Brown,* 39 id. 294; *Haverly* v. *Becker,* 4 N. Y. 169; *Chase* v. *Peck,* 21 id. 581; *Payne* v. *Wilson,* 74 id. 348; *Husted* v. *Ingraham,* 75 id. 251; *Comon* v. *Lakey,* 80 id. 345, 350; *Perry* v. *Board of Missions,* 102 id. 99; *Smith* v. *Smith,* 125 id. 224; *Pratt* v. *H. R. R. R. Co.,* 21 id. 305; *De Peyster* v. *Hasbrouck,* 11 id. 582; *Hoag* v. *Town of Greenwich,* 133 id. 152.) This case is not affected by the Statute of Frauds. (*Smith* v. *Smith,* 125 N. Y. 224; *Beardsley* v. *Duntley,* 69 id. 577, 584.) Neither is the case affected by the Statute of Limitations. (*Coman* v. *Lakey,* 80 N. Y. 350.) The equitable lien passed to the plaintiff by the assignment of the bond and mortgage. The assignment of the principal carried with it the incident. (*Payne* v. *Wilson,* 74 N. Y. 348–354.) The usual course of enforcing an equitable mortgage or lien is to direct a sale of the property and an application of the proceeds, as was done in this case. (Story's Eq. Juris. § 1217; *Price* v. *Palmer,* 23 Hun, 504; *De Peyster* v. *Hasbrouck,* 11 N. Y. 590; *Perry* v. *Board of Missions,* 102 id. 99.) The provision in the decree for amending the description in the mortgage was a useless form, and cannot affect the relief granted. (*De Peyster* v. *Hasbrouck,* 11 N. Y. 582.) The decision of the learned court at General Term cannot be sustained by principle or authority. (*Payne* v. *Wilson,* 74 N. Y. 348; *Pratt* v. *H. R. R. R. Co.,* 21 id. 305; *Gillispie* v. *Moon,* 2 Johns. Ch. 595; *Post* v. *Ætna Ins. Co.,* 43 Barb. 351; *Whitlessy* v. *Delaney,* 73 N. Y. 571, 579.) There was no exception taken at the trial raising any question as to the sufficiency of the pleadings; no objection to the admission of evidence; none were considered by the General Term. Such questions cannot be raised for the first time on an appeal from a final judgment. (*Murtha* v. *Curley,* 90 N. Y. 377; *M. A. Church* v. *O. S. Church,* 73 id. 82–95; *Spears* v. *Mayor, etc.,* 87 id. 359, 376; *Carpenter* v. *Osborn,* 102 id.

552–561; *Peck* v. *Goodberlett*, 109 id. 180–189; *Valentine* v. *Richart*, 126 id. 272.) The pleadings in the equity action were sufficiently broad to take in all the facts found by the referee necessary to uphold the finding of an equitable mortgage of the lot in controversy. (*Hoppaugh* v. *Struble*, 60 N. Y. 430.) Whatever defect may have existed in the pleadings it was properly supplied by the order of the Special Term and the amended complaint served pursuant thereto. (Code Civ. Pro. §§ 539, 721, 723; *Fallon* v. *Lawler*, 102 N. Y. 228; *Rogers* v. *N. Y. & T. L. Co.*, 134 id. 197; *Harris* v. *Turnbridge*, 83 id. 92–97; *Thomas* v. *Nelson*, 69 id. 118–120; *Bates* v. *Graham*, 11 id. 237; *Haddon* v. *Lindley*, 59 id. 320–328.) In the absence of a case containing the evidence and the proceedings on the trial, it must be assumed that the evidence and admissions and circumstances were such as to fully warrant the findings of the referee, and the relief granted thereon. (*Smith* v. *Rathbun*, 75 N. Y. 122.)

*George H. Carpenter* for respondent. The mortgage in suit having been made on the 9th day of February, 1876, and the action not having been brought until September, 1887, the right to claim a reformation of the same was barred by the Statute of Limitations. (*Hoyt* v. *Putnam*, 39 Hun, 402; *Oaks* v. *Howell*, 27 How. Pr. 145; *Cramer* v. *Benton*, 4 Lans. 294; *Bruce* v. *Tilson*, 25 N. Y. 194; *Peters* v. *Delaplaine*, 49 id. 365; Code Civ. Pro. § 388; *Bosely* v. *N. M. Co.*, 123 N. Y. 550; *Carr* v. *Thompson*, 87 id. 160; *Engel* v. *Fisher*, 102 id. 400.) The cause of action for a reformation of the mortgage accrued when the mortgage was made in this case, and the lapse of ten years is an absolute bar to the right to amend the complaint so as to claim a reformation. (*Day* v. *Town of New Lots*, 107 N. Y. 148; *Romeyn* v. *Sickels*, 108 id. 652; Code Civ. Pro. § 1207; *Hall* v. *U. S. R. Co.*, 30 Hun, 375; *Mckyring* v. *Bull*, 16 N. Y. 297; *Laraway* v. *Perkins*, 10 id. 371; *Brazil* v. *Isham*, 12 id. 9; *Wright* v. *Delafield*, 25 id. 266, 370; *Hudson* v. *Swan*, 83 id. 552; *Southwick* v. *F. N. Bank*, 84 id. 420; *Reed*

v. *McConnell*, 133 id. 433; *Douglas* v. *Ferris*, 138 id. 204.) The written contract that the parties made must control until it is reformed and made to express the agreement that the plaintiff says was made. The maxim that in equity that which is required to be done will be considered as done can have no application to this case. (*Gilmore* v. *Ham*, 142 N. Y. 6.) This is not an action upon a sealed instrument, but is an action to have a verbal contract made a part of a sealed contract. An action for a specific performance of a sealed contract is not an action on a sealed instrument. (*Peters* v. *Delaplaine*, 49 N. Y. 372.) The bar of the Statute of Frauds cannot be raised. (*McCotter* v. *Lawrence*, 6 T. & C. 398.) The mortgage as made and delivered must control until reformed, but as the right to a reformation has been lost by the lapse of time, the plaintiff is without remedy. (*Gilmore* v. *Ham*, 142 N. Y. 10.)

O'Brien, J. Before reaching the real question in this case it is necessary to clear away some complications resulting from the practice adopted. The action was begun in September, 1887, to foreclose a mortgage. The complaint alleged that on the 9th of February, 1876, the defendant delivered his personal bond to one Antoinette Appley to secure the payment of $3,000 on the first of June, 1881, with annual interest, and as collateral to this bond, a mortgage upon certain lands described which was duly recorded; that this bond and mortgage had been assigned to the plaintiff, and that neither the principal nor the interest, or any part thereof, had ever been paid, and the usual judgment on foreclosure actions was demanded.

The answer, in substance, was that at the time of the loan and the delivery of the bond and mortgage the defendant and the mortgagee, Mrs. Appley, were partners in business, she having succeeded her husband, who had been a member of the firm for several years prior to his death in 1875; that the money advanced by her was for the purpose of paying debts of the firm of which she was a member, and of the old firm

of which her husband had been a member, and which in some form were a charge upon property which she took under his will; that upon an accounting, concerning the partnership affairs, between her and the defendant, there was due to the firm and to the defendant more than sufficient to pay and satisfy the mortgage, and that the assignment to the plaintiff was without consideration and subject to this equity.

In July, 1887, the defendant brought an action against Mrs. Appley, the mortgagee, and others, to which the plaintiff was subsequently made a party, to settle the partnership affairs including the bond and mortgage in question. The complaint set forth various complicated transactions, not necessary to specify, and among them the execution and delivery of the bond and mortgage for the purpose substantially as alleged in the answer in this case, and asked that it be adjudged to be a partnership debt. Subsequently this action was consolidated with the partnership action and referred for trial. The referee took proofs at length, very little of which appear in the record, and made and filed his report in which he held that the plaintiff was entitled to foreclose the mortgage, and made numerous findings of fact and law concerning the rights of the parties in the partnership action. It will not be necessary to refer to these findings except so far as they relate to the mortgage in question, and as to these facts there was no dispute. It appears that the husband of the mortgagee, the defendant's former partner, had effected an insurance upon his life for $3,000, payable to his wife at death, and that upon his death in 1875, or soon after, that sum was paid to her upon the policy; that the defendant requested her to loan it to him, offering to secure the payment with interest by a mortgage on all his interests in real estate; that she consented to make the loan on this security and paid over the money to him; that he gave the bond referred to and procured a mortgage which both parties supposed covered the land intended to be included therein, but by mistake of the scrivener who drew the paper a portion of the land of considerable value, constituting a substantial part of the security

upon the faith of which the mortgagor advanced the money, was omitted from the description of the property conveyed. The mistake was not discovered until after the commencement of both the actions in question. The referee, in his report, directed that the description of the lands contained in the mortgage be amended so as to include the omitted parcel, which was a lot containing about seventy acres in lot number 27 of "great lot No. 4 of the Hardenburgh patent." The complaint in the action for the partnership accounting, as I understand it, alleged in substance that this land was embraced in the mortgage. After the report of the referee the plaintiff applied to the Special Term for leave to amend the complaint in the foreclosure suit by inserting an allegation that this land was intended by both parties to be mortgaged as security for the debt, and both supposed it had been, but by mutual mistake had been omitted from the description, and asking relief to the effect that the instrument be reformed by amending the description of the property in the mortgage, so as to cover it, and enforced accordingly. This motion was granted upon terms and upon the condition that the defendant should be allowed to amend his answer by interposing the Statute of Limitations as a defense. The pleadings were amended accordingly, the defendant alleging that more than ten years had elapsed since the cause of action had accrued up to the time of the commencement of the foreclosure suit. Judgment was then entered upon the report, and the defendant in this action, who was plaintiff in the other action, appealed to the General Term from the order allowing the amendment, and also from that portion of the judgment which decreed a reformation of the mortgage, and that court reversed the judgment, so far as appealed from, on the ground that the Statute of Limitations was a defense, and also reversed the order allowing the pleadings to be amended, upon what ground or for what reason does not appear.

The order is not reviewable here since the application to amend was addressed to the discretion of the court below, and it would seem to be clear that when it was reversed the amend-

ment to the pleadings which it authorized fell with it. This would leave the parties in the same position as they were in before any amendment was made. The testimony was all taken in the defendant's action to settle and close up the partnership affairs and all the facts in relation to the mortgage came out without any objection, and then the parties entered into a stipulation before the referee that he should decide both cases in one report, upon the evidence thus taken, and there is but one report and one judgment and that in the accounting case. The broad allegations of the complaint in the accounting case which drew into that action every question concerning the mortgage, supplemented by the stipulation, left the pleadings in the foreclosure case without any important function to perform in the litigation. The pleadings in the two actions and the stipulation when read together furnished a sufficient basis for the referee to find all the facts and to draw from them such legal conclusions as were necessary in order to adjust the rights of the parties. When both actions were submitted to the referee it was evidently the intention that he should decide every question arising upon the evidence, so far as it became necessary to a complete adjustment of all the rights of the parties, without regard to any nice questions of pleading or procedure. The questions concerning the plaintiff's right to have the mortgage reformed were attached to the case subsequently but have again disappeared by the reversal of the order which introduced that element into the controversy. Even if that feature of the case still remained the Statute of Limitations would probably be a sufficient answer to it. (Code, § 388; *Bruce* v. *Tilson,* 25 N. Y. 194; *Peters* v. *Delaplaine,* 49 id. 365.) So that the only question now is whether upon the findings the mortgage must be considered in equity as covering the omitted parcel which both parties intended should be included and which they supposed all the time had been embraced in the description of the lands pledged as security for the debt. In other words, whether, as to that parcel, there was not in fact an equitable mortgage which the plaintiff could foreclose for the

satisfaction of his debt in the same action and by the same procedure that the other property was sought to be applied.

There can be no doubt upon the authorities that where one party advances money to another upon the faith of a verbal agreement by the latter to secure its payment by a mortgage upon certain lands, but which is never executed, or which, if executed, is so defective or informal as to fail in effectuating the purpose of its execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt. This lien attaches upon the payment of the money and, unless there is a waiver of it, express or implied, remains and may be enforced so long as the debt itself may be enforced, and no waiver can be implied from the act of the creditor in receiving a mortgage which by reason of fraud, inadvertence or mistake is not effectual to secure a specific lien on the lands or any part of them, nor is this lien merged in any such instrument subsequently executed. (*De Peyster* v. *Hasbrouck*, 11 N. Y. 582; *Payne* v. *Wilson*, 74 id. 348; *Coman* v. *Lakey*, 80 id. 345; *Husted* v. *Ingraham*, 75 id. 251; *Perry* v. *Board of Missions*, 102 id. 99; *Chase* v. *Peck*, 21 id. 581; *Haverly* v. *Becker*, 4 id. 169; *Glacken* v. *Brown*, 39 Hun, 294; *Lanning* v. *Tompkins*, 45 Barb. 308; *Matter of Howe*, 1 Paige, 125; *Smith* v. *Smith*, 125 N. Y. 224; *Hoag* v. *Town of Greenwich*, 133 id. 152.)

Some of these cases hold that the lien of the party who has advanced money under such circumstances is analogous to that of the vendor of real estate for the unpaid purchase money. The vendor's lien rests solely upon the doctrine of equity that it would be inequitable for the vendee who has received the legal title without payment of the purchase money to hold the estate discharged from the claim of the seller for its price; and it is certainly difficult to see any just distinction between the two cases. In one case a party receives the title to real property without paying for it, with or without an agreement that his vendor shall be secured in the payment of the purchase price by a lien upon it by way of mortgage or otherwise. In

the other case the party advances money under an agreement
that its payment shall be secured by mortgage upon specific
real estate, but which agreement has never been perfected.
The right of the vendor and that of the person who has
advanced the money are not essentially different, and each
would seem to commend itself with equal force to the con-
science of a court of equity. The doctrine of equitable mort-
gages is not limited to written instruments intended as mort-
gages, but which by reason of formal defects cannot have such
operation without the aid of the court, but also to a very great
variety of transactions to which equity attaches that character.
It is not necessary that such transactions or agreements as to
lands should be in writing in order to take them out of the
operation of the Statute of Frauds for two reasons, first,
because they are completely executed by at least one of the
parties and are no longer executory, and, secondly, because
the statute by its own terms does not affect the power which
courts of equity have always exercised to compel specific per-
formance of such agreements. (2 R. S. 134, § 10; *Smith* v.
*Smith, supra ; Beardsley* v. *Duntley,* 69 N. Y. 577.)

Assuming, as I think we must, that an equitable lien
attached to all the lands intended to be embraced in the mort-
gage in this case, at the moment of the payment of the money,
in favor of Mrs. Appley, what has since occurred to change the
situation or to disturb the lien? It has not been discharged
by payment. It has not, as we have seen, been waived nor
merged, and, therefore, must have existed at the time of the
commencement of this action. If this is so, then an action
to compel the specific performance of the verbal agreement to
give a mortgage, or to reform the defective one given, was
not necessary, since the plaintiff could proceed to foreclose the
existing lien by an application of the property, under the
judgment of the court, to the satisfaction of the debt.

It is, no doubt, true that such actions are necessary in most
cases, for the reason that a mere lien in equity is a somewhat
precarious security to the creditor, liable to be defeated at any
time by the intervention of the claims of innocent third parties,

who may have dealt with the owner and the land upon the faith of his record title, and in ignorance of the equitable lien. In order to preserve and protect the lien against the rights of such parties, it is necessary, generally, to make it a matter of record, and that cannot be done except by means of a proper action for that purpose. But in this case, as presented, no such question arises. The controversy is between the original parties, who have rested during a long series of years upon the situation as it existed when the money was advanced and the mortgage given, until the loan has more than doubled by the accumulation of unpaid interest, both supposing that the parcel in question had been pledged with the rest for its payment. The case is, therefore, as it seems to us, a peculiarly proper one for the application of the equitable doctrine referred to, and we think that the result of the trial before the referee was correct upon principle and authority.

The whole doctrine of equitable mortgages is founded upon that cardinal maxim of equity which regards that as done which has been agreed to be done, and ought to have been done. In order to apply this maxim according to its true meaning the court will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, and not as the parties might have executed them, always regarding the substance and not the form of the transaction. (Story's Eq. Juris. § 64g, § 156.)

It follows that the judgment of the General Term should be reversed, and that entered upon the report of the referee affirmed, with costs in all courts, and the appeal from the order involving the right to amend the pleadings should be dismissed.

All concur.

Judgment accordingly.