METROPOLITAN LIFE INSURANCE COMPANY, Appellant, *v.* OTTO OSEAS, Also Known as JOSHUA OSEAS, and FANNIE OSEAS, Respondents.

First Department, May 2, 1941.

*Herbert F. Garrick* of counsel [*John A. Meyer* with him on the brief; *Tanner, Sillcocks & Friend*, attorneys], for the appellant.

*Morton Pepper* of counsel [*Oseas & Pepper*, attorneys], for the respondents.

CALLAHAN, J. Plaintiff sues in equity to reform a policy of life insurance issued by it on the life of defendant Otto Oseas. The policy was applied for on February 20, 1917, and was issued on March 8, 1917. The application recited that Oseas desired a plan of insurance " designated in Rate Book as a 20-payment life " policy, in the sum of $1,000, with annual premiums of $36.17. When issued, the policy complied with the requirements of the application. On its face it showed that $1,000 was payable on the death of insured. However, on page 2 of the policy, under the table of guaranteed loan values and surrender options, there appeared two schedules of value, both increasing as the policy became older. The first showed cash or loan values, and the second " paid-up life insurance." The paid-up life insurance value for the twentieth, twenty-fifth and thirtieth years was shown as " $2,000." The paid-up value in the nineteenth year was only $930.

From all the surrounding circumstances, it is quite evident that the figures " $2,000 " were placed in the column of paid-up values by the person who typed the figures therein in mistake for " $1,000."

At all times from the date of issuance until twenty years' premiums were paid, the original policy was in possession of the insured. The company had no copy thereof. On one occasion the policy was brought in to have a change made that had no reference to surrender loan value. Aside from this occasion the company never saw the policy from the time it was issued until after the twentieth year, when the insured brought it in to plaintiff's office and inquired as to its cash value and its worth in event of death. Plaintiff's representative immediately notified the insured that the figures " $2,000 " were an error. When he refused to allow the figures to be corrected, plaintiff brought this suit for reformation.

The trial court found that a scrivener's error caused the insertion of the figures " $2,000." It also found that plaintiff had no way of discovering the error until the policy was presented with the demand for a $2,000 paid-up policy, twenty years after the date of issue. It further found that the retention by the assured, and his failure to call the attention of plaintiff to the error until the twentieth year amounted to inequitable conduct on insured's part. It refused to find any constructive fraud on insured's part. The trial court held that the plaintiff's right to reformation was barred by the

Statute of Limitations, finding that such an action was required to be brought within ten years after the error was made.

The insured claims that, in addition to the bar of the Statute of Limitations, there was no proof of mistake on his part, and that the mistake was not a scrivener's error, in that no prior agreement as to the surrender values had been arrived at between the parties. We find, however, that the evidence showed an intention to have issued a policy " as designated in Rate Book," which meant the usual provisions as to policies of the kind applied for, including the usual provisions as to surrender value.

The rate book figures showed $1,000 as the largest paid-up value that could become available to this class of policy. The law prohibits discrimination by life insurance companies between individuals in any life policies as to any of the conditions of said policies. (See Insurance Law of 1909, § 89.) There was, therefore, an implied agreement between the parties for such paid-up value of $1,000 which the scrivener failed to properly record.

Insured was in court. He failed to take the witness stand, nor did he offer any defense. He attempted by cross-examination of plaintiff's witnesses to show that he expected a policy with a larger surrender value than $1,000, by calling attention to the fact that at some earlier date plaintiff had issued to him another policy of $1,000 which had a $1,450 paid-up value. It appeared, however, that this prior policy was a twenty-payment optional life and endowment policy. It gave five options to the insured, one of which was to receive an endowment of approximately $1,000 in cash at the end of twenty years, or, in lieu thereof, a paid-up policy for $1,450. This was a policy obviously entirely different from the one involved in suit and was in addition issued at a younger age. It gave no support to insured's claim of lack of mistake. Though the trial court found no mistake on insured's part, and no agreement whereby the paid-up insurance at the end of twenty years was to be $2,000, we think that contrary findings were warranted. We think that there were established in plaintiff's favor all of the facts necessary to show that the insertion of $2,000 was a scrivener's error, and plaintiff was clearly entitled to reformation, unless the bar of the Statute of Limitations deprived it of the right to such relief.

The trial court relied on the authority of *Sprague* v. *Cochran* (144 N. Y. 104) to sustain the bar of the Statute of Limitations. In that case the Court of Appeals held that an order of General Term, striking out of the pleadings matters which raised the issue of Statute of Limitations, was not reviewable, and it was prevented from considering that issue. It added (at p. 111): " Even if that

feature of the case still remained, the Statute of Limitations would probably be a sufficient answer to it. (Code, § 388; *Bruce* v. *Tilson,* 25 N. Y. 194; *Peters* v. *Delaplaine,* 49 id. 365.) "

This, of course, was not a holding that the statute was a bar. The statement was entirely unnecessary to the opinion. The cited cases in the *Sprague* case (*supra*) were actions involving specific performance, in no way analogous to actions for reformation for mistake. Knowledge of the right to sue exists in a case of specific performance. In any event the issue involved in *Sprague* v. *Cochran* (*supra*) related to the reformation of a mortgage. The cause of action for reformation due to mistake in the provisions of the mortgage might well be one which would arise on the day of the delivery of the mortgage. A direct holding as to time of accrual of a cause of action with respect to reformation of a deed is found in the case of *Exkorn* v. *Exkorn* (decided by this court in 1 App. Div. 124). There this court stated that the Statute of Limitations began to run on the delivery of the deed, or the making, rather than the discovery of the mistake.

We think that actions to correct errors in deeds or mortgages are to be distinguished from actions to reform contracts such as a contract of insurance. The contracting parties in the latter class of cases possess nothing but the rights under a written agreement, or a mere chose in action. Unlike contracts relating to real property where physical characteristics or recording statutes may put parties on notice, the parties to a contract such as the one before the court have no opportunity to learn of the mistake, other than by examination of the writing. Where, as here, the writing itself was available only to defendant, the plaintiff had no opportunity to learn of the mistake, or of the necessity of bringing suit. It would seem unjust in such a case to apply the bar of the statute on the theory that the cause of action accrued before the mistake could have been discovered.

Even if we were to hold that a cause of action for reformation due to mistake accrues when the mistake is made, or the document is executed, such rule would not apply when there was an element of fraud on the part of the defendants. We find constructive fraud here, and under the circumstances we think that the case is controlled by the rule applicable in similar fraud cases.

*Ulman* v. *Equitable Life Assurance Society* (161 App. Div. 708) was a case where a life insurance policy was sought to be reformed after the lapse of almost twelve years from the date of the error. Plaintiff had not discovered the mistake until after ten years had elapsed from the issuance of the policy. The plaintiff, who was the wife of the insured, had caused the issuance of a twenty-year

endowment life insurance policy on the life of her husband. One Rosenberg was the insurance agent who negotiated the transaction. Despite plaintiff's instructions to him to have her designated as the sole beneficiary, Rosenberg had the policy issued so that in case the assured survived the twenty-year period he received the endowment.

The court there held that the situation involved a constructive fraud in that Rosenberg disobeyed plaintiff's instructions as to how the policy should be made out. It stated that it made little difference whose agent Rosenberg was; it would be constructive fraud to divert plaintiff's property to the husband, who paid no premiums, and to whom no rights were intended to be granted.

The court further held that the beneficiary of the mistake was bound in conscience to correct the mistake, and that the refusal or failure to do so presented a case of constructive fraud. Under such circumstances, it held that the Statute of Limitations did not commence to run until the defendant (the receiver of husband's property) had set up a claim to the policy. In the *Ulman* case the plaintiff had possession of the policy during all the years that she failed to discover the error, still she was permitted to recover.

We think that an analogous situation existed here. In the present case the assured had exclusive possession of the policy. He knew, or should have known, that the paid-up value was intended to be $1,000, and not $2,000. He knew, or should have known, that the plaintiff was bound in law not to discriminate in insured's favor. Plaintiff did not know of the mistake, and could not have been expected to know that any such unconscionable claim would be made as that presented by the assured when he demanded a $2,000 paid-up policy. The failure to disclose the scrivener's mistake and presentation of that claim was such a fraud on assured's part as to call for application of broad equitable principles, and plaintiff's cause of action to reform did not accrue until the date of the assured's demand.

Courts in other jurisdictions have permitted reformation of insurance policies where obvious mistake was established. In *Hibbard* v. *North American Life Ins. Co.* (192 Wis. 315; 212 N. W. 779), through error the cash surrender value was set forth as twice the correct amount. In *Hemphill* v. *New York Life Ins. Co.* (195 Ky. 783; 243 S. W. 1040) an excessive paid-up value was erroneously set forth in the policy. (See, also, *New York Life Ins. Co.* v. *Gilbert*, 215 Mo. App. 201; 256 S. W. 148.) This court recently, in *Equitable Life Assurance Society* v. *Cannon* (259 App. Div. 808; affd., 284 N. Y. 640), approved reformation of a policy so as to correct mistake made by insertion of a $1,000 monthly disability provision instead of $100 a month as applied for.

For the reasons indicated, the judgment should be reversed, with costs, and judgment directed for plaintiff, with costs.

MARTIN, P. J., GLENNON and COHN, JJ., concur; UNTERMYER, J., dissents and votes to affirm on the authority of *Exkorn* v. *Exkorn* (1 App. Div. 124).

Judgment reversed, with costs, and judgment directed in favor of the plaintiff, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.