### PRUDENTIAL INS. CO. OF AMERICA
### v.
### GLASGOW et al.
### No. 21, Docket 22735.

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1953.

Decided Dec. 14, 1953.

Lytle & Lytle, Henry A. Lytle, Buffalo, N. Y., for appellant.

Lamb, Webster & Jordan, Luther Webster, Rochester, N. Y., for defendant-appellant.

Newton, Morgan & Morgan, J. Newton Morgan, Rochester, N. Y., for plaintiff-appellee.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an action of interpleader by Prudential Insurance Company of America, a New Jersey corporation, brought pursuant to 28 U.S.C.A. § 1335. It involves the proceeds of an insurance certificate for $10,000 on the life of Dr. Hugh Glasgow, a research entomologist, of Cornell University. Upon his death in July 1948 both his widow and his two sisters made claim to the insurance, and Prudential, as an indifferent stakeholder, paid the $10,000 into the registry of the court. The dispute arose because the Insurance Company had issued two certificates on the life of Dr. Glasgow, the first of which named his wife as beneficiary, the second his two sisters.[1] After trial to the court without a jury, judgment was entered reforming the beneficiary designation of the second certificate and directing payment of the proceeds to the widow. Grace Glasgow individually and as administratrix of her deceased sister's estate has appealed.[2] She contends that there was not sufficient evidence to warrant reformation and, in any event, reformation was barred by the statute of limitations and the doctrine of laches.

Judge Burke made very detailed findings of fact. There is little, if any, dispute as to the facts so found but the inferences which may legitimately be drawn from them are hotly contested. In somewhat condensed outline the record discloses the following story: In 1931 Prudential issued to Cornell University a group life insurance policy, G. 3478, covering its employees who should elect to participate in the plan. Dr. Glasgow applied for coverage payable to his estate, and executed a written authorization to Cornell to deduct premiums from his salary. Pursuant to his application, certificate 296 was issued to him. Thereafter he caused to be made two changes of beneficiary.[3] The first change was effected in 1934 by an "endorsement" issued by Cornell, making certificate 296 payable to the insured's sisters Grace and Ruth, or the survivor. Dr. Glasgow was married in December 1935 and the following month he wrote Cornell requesting a second change of beneficiary. This change was effected by a rider which named the insured's wife the primary beneficiary.[4]

1. During pendency of the action one of the sisters, Ruth Glasgow, died. The other, Grace Glasgow, as administratrix of Ruth's estate, was substituted as a party defendant.

2. The widow filed notice of cross-appeal in order to preserve her right, if the judgment in her favor should be reversed, to contend that the Insurance Company was liable for negligence in having designated the sisters, rather than the wife, as beneficiary in the second certificate.

3. On the face of the certificate appeared the following provision: "The Beneficiary may be changed in accordance with the terms of the Policy by said member at any time while the insurance on his or her life is in force by notifying the Company through the Employer. Such change shall take effect when due acknowledgment thereof is made by the Company to such person insured and all rights of his or her former Beneficiary or Beneficiaries shall thereupon cease."

4. The beneficiary designation read as follows:

"At the election of the member, it is agreed that the Beneficiary Provision heretofore in effect is inoperative and that if the insurance evidenced by this Certificate matures by death, settlement of the proceeds shall be made as herein provided.

"1. If any of Beulah E. Glasgow, Ruth Glasgow and Grace Glasgow, Beneficiaries, wife and sisters, respectively, of the member, survive the member, the proceeds shall be paid in five annual instalments of two hundred thirteen and 99/100 (213.99) dollars per $1000 payable. Each of such instalments shall be paid on its due date to said wife if living on such due date, otherwise to said sisters, in equal shares, or to the survivor of them, if then living.

"2. At the death of the survivor of the member, said wife and sisters, the proceeds, or the commuted value computed at the rate of 3½% per annum compound interest of any unpaid instalments, as the

The rider, dated March 9, 1936, was sent by Prudential to Cornell and by it was delivered to Dr. Glasgow. He informed both his sisters and his wife that she had been made the primary beneficiary. There is no credible evidence that he later ever requested either Cornell or Prudential to make any further change of beneficiary.[5] In July 1937 Prudential undertook to rewrite, from records furnished by Cornell, the master policy, which was to be made compulsory as to all full time employees, the separately numbered certificates and the enrollment cards of Cornell's employees. The enrollment card of Dr. Glasgow which Cornell furnished Prudential contained a memorandum of the 1934 "endorsement" changing the beneficiary of certificate 296 from his estate to his sisters, but made no mention of the March 1936 rider which designated his wife as primary beneficiary. It was the practice of Cornell to note on the enrollment cards of its employees simple changes of beneficiary made by it but not more complicated changes which were made by Prudential. The new certificate numbered 106, which Prudential prepared, named Dr. Glasgow's sisters, "share and share alike, or the survivor" as beneficiaries. Certificate 106 was delivered to Cornell and by it forwarded to Dr. Glasgow in November 1937. After his death it was found in his safety deposit box with the March 1936 rider and the 1934 endorsement attached to it. In March 1947, when Dr. Glasgow knew that he had an incurable disease, he took his wife to the bank where he had his safety deposit box and caused the box to be put in their joint names. Thereafter the box was not opened by anyone until after his death.

Judge Burke found that from the time of the issuance of the 1936 rider to certificate 296 Dr. Glasgow intended and believed that his wife was the primary beneficiary under the group insurance provided by Cornell; that in rewriting the master policy and issuing certificate 106 Prudential had no intention of changing the existing beneficiary designation, but failed to check its own files, where a copy of the 1936 rider was kept, and relied on the enrollment card furnished by Cornell which did not show the 1936 change of beneficiary; that the insured made no request for a change of beneficiaries after the 1936 change; that he attached the 1936 rider to certificate 106 and intended his wife to be the primary beneficiary of the Prudential policy; that neither laches nor the statute of limitation was a defense because the wife had no knowledge of the terms of certificate 106 until after her husband's death. Accordingly the judge concluded that the widow was entitled to have the beneficiary designation of certificate 106 reformed to correspond with the 1936 rider.

■ The appellant contends that the evidence is insufficient to satisfy the rule announced in numerous New York cases that before a party to an agreement can be granted reformation "he must establish his right to such relief by clear, positive and convincing evidence."[6] Judge Burke's opinion states that to him the proof "seems clear and convincing that Certificate 106 issued by Prudential in 1937 was the result of reflecting the then status of the beneficiary designation as shown on Cornell's enrollment cards * * *" A majority of this court agrees that the evidence was adequate to justify reformation. In issuing the new certificate to take the place of the old one Prudential had no intention of changing the existing beneficiary designation. Nor had the insured any such intention. Neither Cornell nor Prudential has any record of

case may be, shall be paid in one sum to the executors or administrators of such survivor."

5. Testimony by one of the sisters that he told her in 1938 or 1940 that in 1937 he

had made the sisters beneficiaries was not credited by the judge.

6. See Amend v. Hurley, 293 N.Y. 587, 595, 59 N.E.2d 416, 419; Porter v. Commercial Casualty Ins. Co., 292 N.Y. 176, 181, 54 N.E.2d 353.

any request for a change subsequent to the date of the March 1936 rider. It cannot be inferred that such a request may have been made at the time Prudential was writing up the new certificate, because there is nothing to indicate that Dr. Glasgow had any reason to suppose that a new certificate was being prepared until it was delivered to him. We think it obvious that naming the sisters instead of the wife as beneficiary in the new certificate was a mistake resulting from Prudential's failure to inspect its own files which contained a copy of the 1936 rider. The situation seems quite similar to that presented in L. Lewitt & Co. v. Jewelers' Safety Fund Soc., 249 N.Y. 217, 164 N.E. 29, where a renewal policy omitted the terms of a rider to the former policy, and reformation was granted after the loss had occurred. See also D. R. Paskie & Co. v. Commercial Casualty Ins. Co., 223 App.Div. 603, 229 N.Y.S. 121; Ulman v. Newman, 161 App. Div. 708, 146 N.Y.S. 696; Metropolitan Life Ins. Co. v. Oseas, 261 App.Div. 768, 27 N.Y.S.2d 65, affirmed 289 N.Y. 731, 46 N.E.2d 348.

There is, however, another ground on which the award of the insurance money to the widow may be supported irrespective of reformation. Certificate 106 gave the insured the same right to change the beneficiary as had the earlier certificate.[7] The provision that the change may be effected "by notifying the Company through the Employer" and "shall take effect when due acknowledgment thereof is made by the Company" to the certificate holder are terms inserted for the protection of the insurer. If the insured has indicated his intention to change the beneficiary but has failed to give notice, the insurer may waive such requirement and will be held to have done so by interpleading rival claimants. Greenfield v. Massachusetts Mut. Life Ins. Co., 253 App.Div. 51, 1 N.Y.S.2d 52; Rothstone v. Norton, 231 App.Div. 59, 246 N.Y.S. 354, affirmed 256 N.Y. 601, 177 N.E. 157; Moskowitz v.

Equitable Life Ass. Co., 252 App.Div. 75, 297 N.Y.S. 45; see also Davis v. Modern Industrial Bank, 279 N.Y. 405, 18 N.E.2d 639, 135 A.L.R. 1035. A case cited in the Greenfield opinion, Arrington v. Grand Lodge of Brotherhood of R. Trainmen, 5 Cir., 21 F.2d 914, seems particularly apposite. This was an action of interpleader by the Grand Lodge of Brotherhood of Railroad Trainmen, a mutual benefit association which had issued a certificate of insurance naming the insured's sister as beneficiary. Thereafter he married. On the day of his death he executed a paper which stated among other things that he wanted his wife to have the insurance. The insured had the right to change the beneficiary but the certificate provided that the change was to be effective only when made on the books of the Lodge. Nevertheless, the court sustained the claim of the widow, saying 21 F.2d at page 916:

"If the insurer chose to waive or not insist on an objection to the sufficiency of the act of the insured manifesting his intention to change the beneficiary, based on a noncompliance with a requirement prescribed for its sole benefit, an objection on that ground was not available in favor of the original beneficiary."

In the case at bar the insured manifested his intent to change the beneficiaries named in certificate 106 by attaching to it the 1936 rider which named his wife as primary beneficiary. It is true he also attached the 1934 endorsement, but we regard this of no significance since it had been superseded by the 1936 rider. The insured's intention to change the beneficiary designation of certificate 106 should be given effect, since the insurer has waived the limitations imposed solely for its protection.

The appellant contends that the finding that the insured himself attached the 1936 rider is an inference (as it is) and that upon this inference we may not base the further inference that

---

7. See provision quoted in note 3, supra.

he did it with the intent to change the beneficiary designation. Relying upon Lamb v. Union Railway Co., 195 N.Y. 260, 266, 88 N.E. 371, 373, the appellant argues that "it is a well-settled rule of law that you cannot base inference upon inference." The fallacy of any such "rule" has been demonstrated by Professor Wigmore in his treatise on Evidence, § 41. In Gutierrez v. Public Service Interstate Transp. Co., 2 Cir., 168 F.2d 678, 681, this court held no error was committed in refusing to charge the jury that "they cannot base an inference upon an inference." It may well be doubted whether the later New York cases apply any strict rule of thumb to determine the sufficiency of the evidence to support a jury verdict or a finding of fact by the court. In People v. Razezicz, 206 N.Y. 249, at page 271, 99 N.E. 557, at page 565, the court said:

> "Perhaps the weight, if any, to be given to such remote inferences should not be stated generally in the form of rules, but rather in each case by direct decision, or by applying the rules that relate to remote testimony. When testimony is remote, it is of little value, and, when too remote from which to draw any legitimate conclusion, it should be wholly rejected."

Since federal jurisdiction rests on diverse citizenship we will assume that the sufficiency of the evidence to support Judge Burke's findings is governed by New York law. Gutierrez case, supra. We think the evidence sufficient under the state law. The inference that the insured attached the 1936 rider and did so with intent to change the beneficiary designation in certificate 106 are "parallel inferences" based upon all the circumstantial evidence in the case.[8]

Judgment affirmed.

8. In Allen v. Stokes, 260 App.Div. 600, 23 N.Y.S.2d 443, 446, Justice Callahan wrote:
"Defendant contends that a finding of negligence would be an inference based solely on the first inference of an accident. We think not. Both inferences rest upon the circumstances proved. They

may be termed parallel inferences based upon the same facts."
To similar effect is Trimble v. City of New York, 275 App.Div. 169, 88 N.Y.S.2d 324. See also Gutierrez v. Public Service Interstate Transp. Co., 2 Cir., 168 F.2d 678, 681; Hunter v. Shell Oil Co., 5 Cir., 198 F.2d 485, 490.