**Dorothy FREEMAN, Plaintiff,**

v.

**MBL LIFE ASSURANCE CORPORATION, Defendant.**

**No. 98 Civ. 8070(CM).**

United States District Court, S.D. New York.

Aug. 11, 1999.

260

Peter D. Barlet, Warwick, NY, for Dorothy Freeman, plaintiff.

George Berger, Phillips Nizer Benjamin Krim & Ballon, New York City, for MBL Life Assurance, MBL Life Assurance Corporation, defendant.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

On April 26, 1957, Plaintiff, Dorothy Freeman, planning ahead for her retirement, purchased an annuity from Mutual Benefit Life Insurance Company ("Mutual"). She bought a similar one in 1967, and a third, policy number 65042, in 1971. The three annuities were designed to provide her with benefits for retirement and were guaranteed to pay her the relatively modest amounts of $3,572, $3,603, and $3,627.75, respectively. (*See* Freeman dep. at 28). Her premiums were modest as well, in keeping with the level of benefits she had been guaranteed.

In 1983, Mutual's billing department mistakenly converted Ms. Freeman's third policy into a paid-up plan, thinking that Ms. Freeman had stopped paying her premium. Ms. Freeman notified them of this mistake and sent Mutual a canceled check demonstrating that she had not missed any payments. Realizing it had made an error, Mutual reinstated her plan. However, in the process of fixing that mistake, Mutual made another one. The employee who typed the policy information into the computer entered a value that was approximately ten times the amount Ms. Freeman's annuity was actually worth.

Ten years later, in 1993, Ms. Freeman called Mutual to request a change of beneficiary form. While on the telephone, she asked a customer service representative about the value of her accounts. She was surprised to hear that the newest of the three policies was worth substantially more than the other two. Ms. Freeman asked the representative to verify the figures for her. The representative made note of Ms. Freeman's inquiry and promised to get back to her.

Ms. Freeman never received a direct response to her request. However, a few months later she did receive a "Contract Holder Election Form" in the mail. This form was generated as a result of Mutual's bankruptcy and its subsequent reorganization under the umbrella of defendant MBL Life Assurance Corporation. As part of that reorganization, MBL gave every Mutual policy holder the choice of entering into a restructured contract with defendant, MBL Life Assurance Corporation ("MBL") or "opting-out" of the annuities. In the instructions to the contract holder, the form stated that if Ms. Freeman chose to "opt in" she would be "agreeing to certain changes in the contract" and that those changes were outlined in the "Personal Account Balance Information" section of the documents sent to her. Despite her inquiry of a few months previously, the balance showing for Policy No. 65042 on the Personal Account Balance Information sheet was still grossly inflated. Ms. Freeman assumed that the balance shown in the documents she had been sent was the correct amount, since she had not heard otherwise in response to her inquiry. She decided to continue her accounts with MBL and she "opted in" to the restructured policies.

Ms. Freeman subsequently received annual and quarterly reports from MBL. The figures showed thereon were consistent with the figures she had been given over the phone by the sales representative and with the Personal Account Balance Information. In January, 1997, she telephoned MBL to ask about her options for receiving benefits, since her sixty-fifth birthday was close at hand. MBL sent her a letter stating the amount of benefits she was entitled to from her accounts. Needless to say, MBL persisted in erroneously inflating the value of Policy No. 65042. This

inflated her prospective monthly benefit substantially. Ms. Freeman contends that she relied on this information in deciding to retire from her job on December 31, 1997.

On March 3, 1998, MBL sent Ms. Freeman an income certificate, which stated that her combined balance from the three annuities was $97,044.98 and guaranteed her monthly payments of $605.58. Ms. Freeman received her first payment on March 7, 1998. Shortly thereafter, however, she was notified that MBL was auditing her accounts. In March 1998, MBL informed her that the actual value of her account was $20,267.57. Accordingly, MBL advised Ms. Freeman that her monthly benefits would be reduced to $126.47 per month.

Ms. Freeman brought suit to recover the difference between the $97,044.98 quote given to her before she retired and the $20,267.57 revised figure, as well as consequential and punitive damages. Her complaint contains six causes of action: (1) breach of the March 3, 1998 income certificate which promised her $605.58 per month; (2) breach of the March 3, 1998 income certificate based upon a promise to provide Ms. Freeman with the amount of money that she depended upon receiving in her retirement from the annuity; (3) estoppel; (4) account stated; (5) breach of the obligation of "good faith" because MBL was "negligent, careless and reckless" in handling Plaintiff's account; and (6) negligent maintenance of records of Ms. Freeman's accounts.

MBL has moved for summary judgment, arguing that Ms. Freeman is not entitled to receive any money from MBL that is traceable to the clerical error of many years ago. MBL argues that Ms. Freeman's original annuity contract plainly entitled her only to a modest annuity, not one in excess of $60,000, and contends that she should not receive a windfall because of a clerical error made by one of Mutual's employees. MBL also argues that Ms. Freeman could not have reasonably expected that the last annuity that she purchased was worth ten times more than the annuities to which she had been contributing for a longer period of time. MBL claims that the opt-in contract was not a modification of Ms. Freeman's original annuity contract, because it did not intend to increase her benefits payable by more than 1000 times for no consideration. MBL also argues that Ms. Freeman's claims for negligent misrepresentations and negligence fail as a matter of law.

Ms. Freeman has cross-moved for summary judgement, arguing that MBL's belated correction of the long-ago data entry error made by Mutual, and its subsequent refusal to pay her annuity at the higher rate, breached MBL's contract with her. She argues that the form that allowed her to "opt-in" to the restructured plan modified the original contract she had with Mutual—and, thus, that the balance listed on that form was the amount that she could depend on for her retirement. She contends that she did, indeed, rely upon this modification when she decided to retire in December 1997, and asserts that she is entitled to summary judgment in her favor for MBL's negligent misrepresentation and common law negligence.

If this were simply a case of a scrivener's error made in 1983, with no intervening events, this Court would not hesitate to grant summary judgment for defendant on both the contract and negligent misrepresentation claims. New York law frowns on granting an insured a windfall based on such errors. However, the intervening events give rise to issues of fact that necessitate a trial. Accordingly, defendant's motion for summary judgment is denied, except insofar as it seeks dismissal of plaintiff's claim for common law negligence. Plaintiff's cross-motion is denied as well.

## Discussion

### I. Breach of Contract

MBL argues that Ms. Freeman's breach of contract claims must be dismissed. Ms. Freeman responds that she should be

awarded judgment on them. What becomes clear after parsing the papers is that the parties are talking about two separate contracts. For MBL, the contract at issue is the original annuity contract, ostensibly because that is the contract "sued on." Ms. Freeman, on the other hand, claims that the form that allowed her to "opt-in" to a restructured plan with MBL on the terms set forth in the Personal Account Balance Information sheets modified the original contract she had with Mutual. She asserts that, because the mistaken policy value was listed on the opt-in form that she signed—which form specifically stated that it contained "certain changes in the contract"—the inflated amount is the amount to which she was contractually entitled. Thus, the first issue to be decided is just exactly what the contract is.

■ Responding to Ms. Freeman's contract modification argument, MBL originally contended that her original annuity could not possibly have been modified, because there was no consideration for an increase in Ms. Freeman's account balance, in that her premiums did not increase. *See Beacon Terminal Corp. v. Chemprene, Inc.,* 75 A.D.2d 350, 353, 429 N.Y.S.2d 715, 718 (2d Dep't 1980); *Pinsley v. Pinsley,* 168 A.D.2d 863, 564 N.Y.S.2d 528, 530 (3d Dep't 1990). However, at oral argument, Defendants admitted that MBL intended to modify Ms. Freeman's annuity policy if she agreed to a restructured contract. Among other things, MBL intended to increase the value of her policies, independent of the erroneous amount that was being carried in the computer for Policy No. 65042. That increase was part and parcel of the consideration offered to insureds in order to induce them to "opt in" to the restructuring. Indeed, the "Contractholder Election Form" sent to Ms. Freeman in connection with the Bankruptcy Court's restructuring stated that her acceptance of the opt-in proposal would work "certain changes in the contract" and

that those changes were outlined in the Personal Account Balance Information section of the form (which, of course, stated an inflated face value for the policy). Thus, it is impossible for MBL to prevail on a claim that the underlying annuity policy was not modified.

MBL's "no consideration" argument fails also. Ms. Freeman tendered consideration for the modification of her policy in the form of foregoing her right to collect a fraction of the face amount of the policy immediately and waiving any and all claims she might have arising out of the Mutual bankruptcy or the underlying contract.

In light of this, MBL's argument that the contract at issue is the original annuity contract must be rejected. The contract between the parties is the "opt-in" policy that was tendered to Ms. Freeman in 1993, and to which she assented.

Although it has not formally sought reformation of this contract—no doubt because it did not anticipate that the Court would reject its theory of what constituted the contract—MBL's position in opposition to Ms. Freeman's cross-motion is effectively that it is entitled to reformation, in that the modified policy balance erroneously simply carried forward the longstanding scrivener's error.[1] MBL asserts, no doubt correctly, that it was never its intention to alter Ms. Freeman's policy so as to give her vastly more in benefits that she had ever bargained for—or paid for. Ms. Freeman responds that the only account balance information she received prior to receiving the opt-in offer, was that her policy was worth over $50,000.00, that she called the possibility of an error to the insurer's attention, and that shortly thereafter she received the Contract Holder Election form, which specifically stated that acceptance would modify her old contract in ways set forth on the Personal Account Balance Information sheet. That sheet, of course, told her that her modified

1. In the following sentences, I have reinterpreted MBL's arguments so they fit more logically into the case as I now understand it—

which, admittedly, is not at all the way the parties briefed it. I have not changed the arguments.

contract was now worth some $56,059.21 Having raised the issue and received this indirect "answer," she argues that the contract was remade precisely as she intended, and that MBL—which was in a position to uncover the error and did not—must bear the burden of its negligence.

■ As to the issue of whether the contract is enforceable as written or can be reformed, there are questions of fact that preclude summary judgment. Reformation is appropriate where a contract is based on mutual mistake of fact—*i.e.*, one shared by both parties to an agreement—or on a unilateral mistake, not the product of negligence, where the opposite party was or should have been aware of the error and where enforcement of the contract would be unconscionable. *See* N.Y.Jur.2d, Contracts, §§ 126, 129, and cases cited. In order for defendant to reform the contract, it must overcome the "heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties" by showing in "no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978). Because the parties did not brief theories of mistake, I cannot say whether MBL is arguing mutual mistake or unilateral mistake. However, whatever theory MBL argues is applicable to these facts, there are questions of fact for a jury to resolve.

■ Primary among them is the reasonableness of Ms. Freeman's reliance. MBL claims that Ms. Freeman's reliance on a mistake made by Mutual was not reasonable. It cites several cases in support of this argument. *See Metropolitan Life Ins. Co. v. Oseas,* 261 A.D. 768, 27 N.Y.S.2d 65 (1st Dep't 1941) (holding that it would be unconscionable to hold an insurance carrier to a mistake that would double the amount of the policy); *Jersey Interstate Wire and Strip Corp. v. Metropolitan Life Ins. Co.,* 41 Misc.2d 967, 247 N.Y.S.2d 27 (1964) (holding that a "scrivener's error" in an insurance policy could be corrected even though nineteen years had passed since the error was made); *Peoples Security Life Ins. Co. v. Madnick,* 1993 WL 149006, *3–4, 1993 U.S.Dist. LEXIS 5972 at *4 (S.D.N.Y. May 6, 1993) (allowing an insurance company to take back an overpayment to an insured which was the result of an "inadvertent computer error"). MBL also argues that recovery is not permitted—indeed, would be unconscionable—where "it is unbelievable that the plaintiff actually bargained for and expected to receive such a large retirement benefit. . . ." *Fahy v. Security Mut. Life Ins. Co.,* 74 A.D.2d 984, 426 N.Y.S.2d 184, 185 (3d Dep't 1980). In *Fahy,* the court held that reliance upon a negligent misrepresentation of an insurance policy was unreasonable where the insurer made a mistake and stated that the plaintiff would receive $500 per month in monthly retirement benefits when the plaintiff's actual premiums amounted to only a total of $673.75. MBL argues that the plaintiff in *Fahy,* as in the case at hand, could not reasonably rely on such an obvious mistake.[2]

While MBL has not reasoned through what its reasonable reliance argument means in the context of a contract reformation case, the issue is clearly pertinent to such a determination. If her reliance was unreasonable, then either the mistake

---

**2.** MBL also contends that Plaintiff's reliance was not reasonable as a matter of law because the annuity contract was unambiguous. Under New York law, an unambiguous contract precludes a plaintiff's promissory estoppel claim based upon a subsequent inconsistent written or oral representation. Hence, any reliance upon such mistaken representation is unreasonable as a matter of law. *See Aquilio v. Police Benevolent Assoc. of N.Y.* *State Troopers, Inc.,* 857 F.Supp. 190, 208–11 (N.D.N.Y.1994) (holding that mistaken communication to insured did not serve as a basis for estoppel claim against plan administrator where the plan's terms were unambiguous). MBL argues that Plaintiff's annuity policy stated that it was guaranteed to provide a "retirement amount of $3,627.75 upon maturity in June 1998." The contract stated that "this retirement annuity and the application

of fact underlying the contract was mutual (in which case MBL's negligence is not an issue) or it arose in a situation where Ms. Freeman was or should have been aware of MBL's error and where enforcement of the contract would be unconscionable.

On this record, there are clearly questions of fact concerning the reasonableness of Ms. Freeman's reliance. The case is somewhat similar to *Knowles v. Teachers Ins. & Annuity Assoc.*, 171 A.D.2d 1068, 569 N.Y.S.2d 244 (4th Dep't 1991), in which a defendant's motion for summary judgment was also denied. In *Knowles*, the plaintiff's employer made a mistake in his account information, causing the insurance company to overestimate the amount of monthly benefits to which the plaintiff was entitled. The Appellate Division held that summary judgment was properly denied because there was an issue of fact over whether a mistake in reporting the plaintiff's annuity premiums was one that warranted reformation of the insurance contract. The same is true in this case. Plaintiff has established that she questioned the insurance company's statement concerning her account balance, that subsequently she received a communication indicating that the company wished to modify her policy in terms that were very much in her favor, and that she relied on the company's failure to confirm her suspicion concerning her account balance in executing the modified contract. It is for a jury to determine whether Ms. Freeman made any mistake (as the law understands mistake) when she entered the new contract, or, in the alternative, whether she can hold MBL to its mistake because her reliance was reasonable.

This is not to say that defendant lacks persuasive evidence that Ms. Freeman's

reliance was unreasonable. In addition to the usual things that make reliance unreasonable in scrivener's error cases (most notably, the disparity between the amount of benefits offered and the amount of premiums paid), there is the fact that neither of Ms. Freeman's other policies was "restructured" quite so radically during Mutual's bankruptcy reorganization, as well as her own statement that, when she was initially advised about the erroneous balance on her third annuity, she "didn't believe that it could be that much." (Freeman depo. at 43) So defendant may well be able to prevail at trial. However, a trial there must be.

In a case of unilateral mistake, there are generally questions of fact concerning negligence as well. It would be premature for me to rule that there are no disputed issues of material fact on this issue, as the parties have not briefed the issue in the context into which my ruling on the contract places the case.

## II. Negligent Misrepresentation

▆▆▆ In the alternative, Ms. Freeman claims that MBL is liable to Ms. Freeman for negligent misrepresentation because it had a duty to speak with care under the standard set forth in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551, 483 N.E.2d 110, 125, 493 N.Y.S.2d 435, 450 (1985).[3] In *Credit Alliance*, the Court of Appeals set a standard to determine whether an accountant could be held liable, absent privity of contract, to a party who relied upon a negligently prepared financial report. The court set forth the following prerequisites: (1) awareness that the representations were to be used for a particular purpose or purposes; (2) reli-

---

on which it is based ... constitute the entire contract." MBL contends that since the policy was unambiguous, Ms. Freeman's reliance on a larger benefit would be unreasonable as a matter of law. However, this argument depends on the original policy's being the contract in issue. As I have already found, that contract was modified. If the modified contract is deemed unambiguous, then it unambiguously entitles Ms. Freeman to vastly

more in benefits than she has paid for. MBL may well have an argument that the modified contract is ambiguous, since it is some combination of the underlying policy and the modifying documents, but no such argument has been made as yet.

3. This claim is an alternative to the breach of contract claim because, under New York law, breach of a contract cannot also give rise to

ance by a known party or parties in furtherance of that purpose; and (3) some conduct by defendant linking them to the party or parties and evincing defendant's understanding of their reliance. *See Credit Alliance,* 65 N.Y.2d at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110. In a subsequent case of negligent misrepresentation, *Kimmell v. Schaefer,* 89 N.Y.2d 257, 675 N.E.2d 450, 652 N.Y.S.2d 715 (1996), the court noted that a plaintiff's reliance must be justifiable. *See Kimmell,* 89 N.Y.2d at 261, 652 N.Y.S.2d 715, 675 N.E.2d 450.

Ms. Freeman claims MBL was aware that its representations would be used for a particular purpose, that Ms. Freeman would rely on its statements in furtherance of that purpose and that MBL's conduct illustrates an understanding that Ms. Freeman would rely on those statements. Ms. Freeman claims that the Personal Account Balance Information, the Contract Holder's Election Form (which gave Ms. Freeman the choice of "opting out" of the original agreement), quarterly reports on the accounts, and MBL's correspondence was prepared so that Ms. Freeman could make an informed decision whether or not she would retire. Ms. Freeman claims that MBL reasonably knew that Ms. Freeman would rely upon the information and that is why the document she received detailing the monthly payments she was entitled to said that the information was correct and would not change. MBL responds that Ms. Freeman's reliance was not reasonable.

In light of the unusual circumstances presented by this case, the same issues concerning reasonableness of reliance that precluded summary judgment on the contract claim preclude it here. The motion is denied.

## III. Negligence

■ Ms. Freeman also pleads claims for common law negligence (fifth and sixth

claims). To prevail on those claims, Ms. Freeman must demonstrate that MBL owed her a duty of care, that MBL breached that duty and that plaintiff suffered damages as a proximate result of that breach. Ms. Freeman claims that MBL had a fiduciary duty to her, that it breached that duty by not reviewing her file during the first 41 years that they handled it, and that this breach caused her damages because she decided to retire too early in reliance on their mistake.

■ Ms. Freeman's fifth and sixth causes of action are fatally defective, and therefore defendant's motion for summary judgment dismissing them is granted. MBL is correct that it did not owe Ms. Freeman a special duty, which is a prerequisite to recovery. Under New York law the relationship between an insurance company and a policyholder is a contractual relationship, not a fiduciary one. *See Gaidon v. Guardian Life Insurance Co. of America,* 255 A.D.2d 101, 679 N.Y.S.2d 611, (1st Dept.1998) (citing *Rochester Radiology Assocs. v. Aetna Life Ins. Co.,* 616 F.Supp. 985 (W.D.N.Y.1985)); *see also Murphy v. Kuhn,* 90 N.Y.2d 266, 660 N.Y.S.2d 371, 375, 682 N.E.2d 972 (1997) (holding that an insurance broker did not have a fiduciary duty to his customer even though the insured had been his customer for seventeen years and had provided several insurance services to the plaintiff). MBL notes that while the cases that Ms. Freeman cites in support of its argument hold that a special relationship creating tort liability may exist outside of a recognized professional relationship, *see Ossining Union Free School District v. Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989) (holding that architects and engineers were liable for statements made to school), New York courts specifically hold that insurers do not have such a relationship with their in-

---

tort recovery. Therefore, if MBL breached its contract with Ms. Freeman, no claim for negligent misrepresentation lies. However, if there was no breach, or if the contract cannot

be enforced or can be reformed, it still may be possible for Ms. Freeman to sustain a claim for negligent misrepresentation.

sureds. Ms. Freeman has not cited any cases which demonstrate that MBL had a duty to monitor her files more often than it did. Nor, as noted above, did either Mutual or MBL owe her any duty of care, as recognized under tort law. Their relationship was wholly contractual. Therefore, no claim in simple negligence lies.

### Conclusion

Plaintiff's motion for summary judgment is denied. Defendant's motion is granted to the extent of dismissing the fifth and sixth claims for relief, sounding in common law negligence, and is otherwise denied.