**Susan M. MILLER, Executrix of the Estate of Orman R. Muzzy, Plaintiff–Appellant,**

**v.**

**HARTFORD LIFE INSURANCE COMPANY, Defendant–Appellee.**

**Docket No. 02–7734.**

United States Court of Appeals, Second Circuit.

April 14, 2003.

Robert J. Krzys, Amsterdam, NY, for Plaintiff.

David B. Crevier, Springfield, Mass., for Defendant.

Present: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United Stated Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 14th day of April, two thousand and three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Plaintiff Miller appeals from the Memorandum Decision and Order, dated May 17, 2002, of the U.S. District Court for the Northern District of New York (Homer, M.J.) granting defendant Hartford Life Insurance Company's ("Hartford") motion for summary judgment and denying her motion for summary judgment.

Miller brings this diversity action as the executrix of the estate of Orman Muzzy. Miller is Muzzy's grandniece. Muzzy was born in 1915, as was his wife, Helen, whom he married in 1944.

In late 1994, when he was seventy-nine years old, Muzzy contacted his attorney, George Mills, concerning the purchase of an annuity. Specifically, Muzzy told Mills that he want to purchase a "single premium immediate life annuity" as a means of shielding his assets from any attempt by the Government to seek reimbursement for Medicaid benefits. Muzzy expected that he would be vulnerable to an attempt at reimbursement because Helen, who had been diagnosed with Alzheimer's disease, would soon need to enter a nursing home, the cost of which would largely be borne by Medicaid.

Muzzy told Mills that he wished to purchase an annuity which would name him as sole beneficiary. This wish was based upon Muzzy's belief that naming a beneficiary other than himself would not protect the annuity from Medicaid reimbursement. It is not contested that this belief was false, and that Muzzy in fact received no benefit with regard to Medicaid by not naming someone else as a beneficiary.

Mills testified that he had no experience in legal matters involving Medicaid, and no experience in "elder law" generally. Mills also testified that he did not opine on the wisdom of the purchase beyond asking Muzzy if he understood the risk inherent in a single premium immediate life annuity, i.e., that he would receive payment under the annuity only so long as he lived and that, should he die before his expected life span, the seller of the annuity would retain the balance of the purchase price. It was Mills' impression that Muzzy was fully aware of this risk. Indeed, Mills was convinced that Muzzy "had his mind made up" regarding the annuity purchase. He also testified that Muzzy was to all indications of sound mind.

According to Mills, all Muzzy asked him to do with respect to the purchase was to inquire among various insurance agents as to which of them offered the best deal. Mills eventually recommended that Muzzy

contact the Rowledge Agency, which was an authorized dealer of Hartford insurance products. The agency had provided ordinary insurance services to Muzzy in the past.

Muzzy went to speak to Roderick Rowledge in January 1995. Rowledge testified that Muzzy told him that he was intent upon purchasing an annuity naming himself as sole beneficiary and wanted no recommendation from Rowledge as to whether or not this was a good idea. Like Mills, Rowledge also testified that he inquired as to whether Muzzy understood the risks of an annuity and was convinced that he did.

Also as with Mills, Rowledge testified that he discussed Medicaid with Muzzy and that Muzzy asserted that he had "checked it out" on his own and was under the impression that naming a beneficiary on the annuity other than himself would subject the annuity funds to Medicaid reimbursement. Rowledge asserted that he had no prior knowledge as to whether or not Muzzy was correct, but that he telephoned a Hartford sales representative, who agreed with Muzzy's position.

Rowledge testified that he saw no indication that Muzzy was not of sound mind. Further, after speaking with Muzzy, Rowledge called the vice-president of Muzzy's bank, who confirmed that Muzzy was in full possession of his faculties.

Muzzy purchased the annuity on January 18, 1995 for $180,000. On the application form, he elected the form of annuity that promised payments only for the remainder of his life, rather than one of the available options for somewhat reduced payments for life with a guarantee of a minimum number of years of benefits to designated beneficiaries. Five days later, his wife Helen entered a nursing home. It is uncontested that Muzzy made no effort to rescind the annuity during the 10–day grace period provided for this purpose.

Under the terms of the annuity, Muzzy received monthly payments of $2,192.40. He died of "end stage congestive heart failure" on September 23, 1996. Thus, Muzzy received $43,848 on the annuity, leaving Hartford $136,152 on his death.

We review de novo the District Court's grant of summary judgment. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285 (2002). Having considered Miller's claims pursuant to this standard, we affirm the District Court in all respects.

**A. Constructive Trust/Unjust Enrichment.** In considering whether to establish a constructive trust, the elements a court may consider include the existence of "1) a confidential or fiduciary relation, 2) a promise, 3) a transfer in reliance thereon and 4) unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir.1999) (citation omitted). "[A]lthough these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." *Id.* (citation and quotation omitted). Still, "[u]nder New York law, one who seeks to impose a constructive trust must establish the facts giving rise to that remedy by clear and convincing evidence." *The Martha Graham School and Dance Foundation, Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F.Supp.2d 567, 610 (S.D.N.Y.2002).

 A constructive trust should not be established here. The central allegation in Miller's complaint is that Muzzy "was easily confused, given his advanced age, deteriorating health and the effects in which the diagnosed malady of kidney failure impaired his ability to comprehend." But Miller also asserts that *it is not herein contended that [Muzzy] was mentally incapacitated* [,] but, instead, if matters had been better explained ... some other pru-

dent [investment] choice could have been made."

Muzzy's purchase of the annuity was not impulsive; he asked Mills to find him the best deal and the purchase itself did not take place until weeks later. As already noted, both Mills and Rowledge believed Muzzy to be of sound mind. The most Miller herself testified to was that Muzzy was sometimes depressed and confused in his last years. And Miller's expert witness merely opines that the purchase of the annuity was "totally inappropriate," not that Muzzy did not understand what he was buying into. At most, the evidence in the record establishes that Muzzy made an unwise decision, not that he was incapable of making an informed choice.

What is more, "[u]nder New York law the relationship between an insurance company and a policyholder is a contractual relationship, not a fiduciary one." *Freeman v. MBL Life Assur. Corp.*, 60 F.Supp.2d 259, 266 (S.D.N.Y.1999) (collecting cases). Miller' assertion that "it goes without saying" that such a relationship must exist here because of the size of the investment is wholly unsupported. There is no contention here that Rowledge was— or that he held himself out to be—an investment advisor, someone who *does* have a fiduciary relationship with clients. *See Capital Dist. Physician's Health Plan v. O'Higgins*, 939 F.Supp. 992, 1002 (N.D.N.Y.1996).

A corollary of this lack of a fiduciary relationship is that "[t]here [is] no duty cast upon the defendant to investigate the health of those seeking annuities." *Tabachinsky v. Guardian Life Ins. Co. of America*, 147 N.Y.S.2d 719, 722 (Sup.Ct. N.Y.Cty.1956). Thus, even if Muzzy was occasionally confused due to poor health, there was no obligation on the part of Rowledge or Hartford to ascertain this.

Further, the only promise that Rowledge and Hartford made to Muzzy is that he would be paid $2192.40 a month until he died. It is undisputed that this promise was carried out. It is thus incorrect for Miller to assert that Muzzy "received nothing" or "truly received no benefit whatsoever" pursuant to the annuity.

**B. Negligent Misrepresentation.** Again, it is not disputed that both Muzzy and Hartford were incorrect in their assessment about the effect of the annuity upon Medicaid reimbursement. But an essential element of a claim of negligent misrepresentation is the existence of a duty on the part of the defendant, arising from a fiduciary relationship, to impart correct information. *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir.2000). No such relationship exists in this case.

■ **C. Rescission.** "Annuity agreements, like other contracts, may be rescinded, set aside, or voided upon proper grounds. Thus, where an annuity agreement apparently was entered into through fraud, duress, misrepresentation, or undue influence, or where it appears that the underlying transaction was unconscionable under the circumstances, the agreement may be set aside or recovery back of the consideration may be permitted." 4 N.Y.Jur.2d, *Annuities*, § 13. None of these grounds is present here. Indeed, as the District Court found, Muzzy effectively ratified the annuity contract by not availing himself of the ten-day grace period in which he could have rescinded the contract, and by accepting payments under the contract for nineteen months.

**D. Claims Under New York Statute Law.** The District Court correctly held that, in so far as it can be ascertained what claims Miller is asserting under statutory law, such claims are waived because they were only asserted as part of Miller's op-

position to Hartford's summary judgment motion. No statutory claims are set forth in the complaint and, as Hartford points out, Miller appears to have only considered bringing such claims more than a year after the complaint was filed by writing the state Department of Insurance in order to ask their advice as to which statutory claims might be appropriate.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED.**